Good morning, your honors. I'd like to reserve three minutes for rebuttal, please. Welcome back. Thank you. And my colleague today, I represent Mr. William Eakes. Now, in this case, the prosecutor chose to open her trial with the testimony of the victim's mother, Myra Chrisman. The prosecutor also chose, however, to withhold from the defense impeachment evidence that could have been used to impeach Ms. Chrisman. Using that information, the defense could have shown that she had told the prosecution a series of lies, apparently designed to embellish or to fortify a case of felony murder against Mr. Eakes. Mr. Hawley, I think we understand what the case is about, so I would suggest that we cut to the chase. And that is, it seems to be that your Brady-Giglio argument is unexhausted. And the reason for that is obvious. This material didn't come up until much later. So the question that we're wondering about, among other things, is what do we do with this unexhausted claim? Your Honor, yes. Well, if it is a winning Brady claim, which of course we say it is, then that overcomes procedural default. It's not a winning claim. We don't have authority over a winning claim. We can deny. But we can't grant your winning claim if it's unexhausted because that deprives the state to have actually been able to address it. Your Honor, under clearly established cases to prove the cause and prejudice to overcome default, you prove cause by the fact that the state withheld exculpatory material. And the prejudice is established by the fact that the exculpatory material reaches the materiality standard. And you're prejudiced by having lost that claim. That's in the Sixth Circuit en banc case, Bell v. Bell. In the Supreme Court case that lays it out, I believe it was Kiles v. Whitley. I know I briefed this below in the district court, but these issues really merge. Well, you're right up to a point. You're right that there are a set of circumstances under which we can do that. But as I understand it, we have to find that there's an absence of available state corrective process or that circumstances exist that render the process ineffective to protect the appellant in order for us to be able to do what you just said. So yes, we can do it, but only if those circumstances exist. So here, because it seems like there may well be an available remedy back before the state, why shouldn't you be obligated to go back there and present this to the state court first, the effect of which then changes the standard of review when this court then would later get to the merits from basically de novo to the deferential HEDPA standard of review, which is, as I understand it, the whole point of this. I'm not sure what the state remedy is, and I'm sure that the state has not argued that. They haven't identified a remedy that we should have been using. They do have post-judgment remedies for late disclosures like this, don't they? There may be, but in the state post-conviction procedures in Tennessee, there is a one-year deadline for filing a post-conviction, and there are exceptions for actual innocence. You're saying there is no equitable tolling in Tennessee? Not that I'm aware of, Your Honor. I've litigated Brady claims just like this before, Your Honor, where it's a David Robinson. Well, would it make sense for the state court to make a ruling on whether there is such a remedy? If not, I mean, it does seem like it's an issue that's hanging out there, even though it wasn't raised by either side here on appeal. But, I mean, that's the first thing that jumps out to us, is that you've got this Brady material disclosed very late. It may be material, but do we have a state court ruling on this thing? No, no one's ever gone to see if there is a post-conviction remedy and what the state would do on it. And that seems like it's a piece of this appeal that's missing right now. Your Honor, if it is missing, it's because the state has waived it. Can the state waive this issue? I thought that they could only expressly waive failing to exhaust. It doesn't have to have a – let's see, I could quote the provision to you. Frankly, I'm not sure if this is one of those things they have to expressly waive or if it's – The state could waive prior to it, but they have to expressly waive after it, and they haven't expressly waived here because nobody's talked about it. Your Honor, they probably haven't expressly waived anything. I'm not positive that that rule applies, but that's my position at this moment. I mean, normally, if they don't raise something below, it's waived. I know there is some kind of special rule in habeas where they can – things aren't waived. But since this isn't in litigate, I'm not – Okay. I mean, here's the statute, 28 U.S.C. 2254b-3. A state shall not be deemed to have waived the exhaustion requirement or to stop from reliance upon the requirement unless the state, through counsel, expressly waives the requirement. I mean, it seems to be on point. There is no waiver unless it's expressed. Your Honor, you know, I'm just not sure. I don't know if I've read case law applying to a waiver of a state remedy that may or may not exist. I mean, the state hasn't even asserted that a state remedy may exist. And I know I've litigated other cases. There was a case, David Robinson v. Mills. We found exculpatory evidence. We presented to the federal district court, and it was upheld in the Sixth Circuit. I've litigated other Brady claims that we were – you know, our office has found the material, and we've litigated in federal court. What would be the principled basis of your objection to us sending it back to the district court to deal with exhaustion? Well, possibly waiver. I understand. You lose on waiver. Your Honor, delay for one thing. Mr. Eeks has been in prison for – since 98. He's his uncle who got a 20-year sentence. He's about to get out. He's about to flatten that sentence. This could take years and years for Mr. Eeks to go back into state court, get reviewed there, come back here, and then we're subject to AEDPA, of course, and limitations like that. Our objection is we brought the claim here. You know, it's the state's fault that this was not brought up in state court, that the prosecutor failed to disclose this material. They could have disclosed it at any time. They could have disclosed it during the state post-conviction proceedings. They withheld it there, too. They've – it's their misconduct that has kept it out of the state post-conviction proceedings, just like it's their misconduct that kept it out of the trial. And so that's our objection to that, Your Honor, that Mr. Eeks will be delayed and it's the state's fault that it hasn't been litigated before in the state courts. And we do think that – Do you have any basis to say that there would be unreasonable delay were we to do what we've asked you about, given your experience with prior cases? And I'll make this a compound question. So as to suggest that we should consider some sort of direction as to how timely they should do this? I mean, that would mitigate, Your Honor. I'm not sure how the jurisdiction on that works. I know that when a writ of habeas corpus is granted and the state is ordered to retry the defendant within 90 days, for example, that the state is allowed to continue that on and on as long as they're in the process of trying him. My question was, in your experience, because you handle a lot of these, has there been undue delay when it's gone back to exhaust or not? Well, Your Honor, I've never seen a case sent back to exhaust in state court. That's fair enough. Like I said, Your Honor, Mrs. Christman was put on as a first witness because her testimony was very important. She was the genesis of this felony murder charge in her interview with Mr. Milam. Her testimony was obviously relied on in the closing argument. Without her at Jerry Barnes's trial, the jury hung on this issue, and that is an empirical measuring rod of the importance of her testimony. And the case was even close just whether to go to the jury. If you look at the judgment of acquittal argument in Jerry Barnes's case, the judge, which is at page 2015 of the record, the judge took a break to decide whether or not, well, is there even enough evidence to go to the jury, when, well, really all you have is a fight in a room, the man is killed, and his body is stripped. Is that even enough to go to the jury? That was in Eke's case or Barnes's case? That was in Barnes's case, Your Honor. And, unfortunately, we don't have the transcript of the closing arguments or opening arguments in Mr. Eke's case. You're saying it was a close question because the judge took a break? Well, Your Honor. Maybe he had to go to the bathroom. Well, he indicated it was a close, that he wanted to go back and look at the case law and think it over, and there's quite a bit of back and forth on it.  And the usefulness, I mean, there's a reasonable possibility this would have neutralized Myra Christman's testimony. She had told a series of lies about this money and the shoes. She had told lies about both Kevin and Michael Child supposedly saying things that would indicate this was a deliberate robbery. And she had told lies about, well, this is a setup by Corey Watkins because he had the pager, and he was using the pager after my son's death, and all that, which was just flat-out not true. She had also, when the police came to her door, she had refused to tell them when she last saw her son, and this was a day or so after he was missing. This all would have been very useful material to attack this lead witness for the prosecutor. Of course, this is very important to Mr. Eke's. The question of was he just dragged into a fight with his uncle or was he trying to rob the man, that's the most important question in his life. He's in prison for the rest of his life based on that jury decision, the jury's decision about that question. And he was robbed of the chance of having a jury decide that on a fair record. Mr. Trawley, what do you do with the findings in the State Appellate Court on the circumstantial evidence of the robbery? I mean, they cited that the victim's pants pockets were inside out, there was a piece of chain jewelry and missing shoes. That has nothing to do with Myra Christman. We understand your compelling argument on things that were withheld, but what's the significance of that finding? Yes, Your Honor, I mean, that evidence, I mean, it shows there's enough evidence to go to the jury that there was a robbery, you know, the body was stripped. But to make it look like a before-the-fact robbery rather than after-the-fact robbery, that's where Myra Christman really came in because if you have one case where, you know, the deceased walked in the room holding a wad full of $100 bills and those were missing, well, that looks a lot more like a before-the-fact robbery. Whereas if he walked in holding a $20, well, that probably wasn't. And so she made it look like he walked into the room with a bunch of stuff worth stealing. It doesn't have to be before-the-fact. It has to be at least contemporaneous. Yes, Your Honor. I mean, opposed to completely after-the-fact. Yes, but when killing the man, they had to intend to be robbing him. I see my time is up. If there's more questions. All right. Thank you. Thank you, Your Honor. Good morning. May it please the Court, Nick Spangler on behalf of the Respondent and Warden. I'll just touch on a couple of issues that the Court raised earlier about exhaustion. And certainly the Respondent has not waived the exhaustion requirement. I can't recall whether it was in the Respondent's initial motion to dismiss or whether it was in a subsequent response. But initially the Respondent did raise the statute of limitations issue as well as exhaustion, asserting that it was both time-barred and procedurally barred. And certainly we don't waive that here. I think I would agree with Mr. Hawley to the extent that for the sake of judicial economy and because the District Court's ruling was on the basis of the merits, we'd encourage the Court to the extent that it would reach the merits and deny the appeal, we'd encourage the Court to do so. But alternatively, I think the Court is in a position to deem all of these claims procedurally barred as well. But I'd like to, unless the Court has further... We're not questioning whether we can deny it or whether we can affirm the denial. Certainly. We agree with you on that. The question is if the panel concludes that these claims have merit, then how do we grant it in the face of this exhaustion problem? And I think you're correct, Your Honor. This Court is not able to grant relief on the merits of an un-exhausted claim. So to the extent that they find that it's both un-exhausted but that it may have merit, I think a remand to the District Court would be appropriate in that case to determine whether or not there is an appropriate basis for relief in the state courts. As to your question... Are you prepared to speak to whether there is an available state corrective process? And so I was just about to address something Your Honor brought up, whether or not the state has equitable tolling. There is in quorum nobis proceedings, error quorum nobis proceedings in the state court, a means by which you can overcome a limitations bar, a statute of limitations bar, by engaging in an equitable tolling analysis. I don't want to dive too far into that discussion, though, just because while our position is that the claim is un-exhausted, our alternative position is that the claims simply don't have merit and that's an appropriate basis for dismissal because that was the District Court's basis for dismissal as well. You said something about procedural default. How could it have been procedurally defaulted if the claims didn't arise until 2013? They didn't arise until 2013, but the issue is whether or not there was cause to excuse that. And Mr. Hawley touched on that briefly. But our position is that there was not cause to excuse that because these records would have been subject to a public records request in the intervening time between the end of the petitioner's state post-conviction proceedings and the initiation of these federal habeas proceedings. And it's relevant to point out at this juncture that not only were we alleging that they were procedurally defaulted, but this claim was time-barred as well. And I don't recall by how many years, but it was several years. And I think that factor plays into the equation when determining whether or not the petitioner was diligent about requesting any of these records in the intervening time between his state post-conviction proceedings. You've injected procedural default, which generally then ends up merging into being unexhausted. In other words, it's cause for the procedural default because you didn't produce the records. It seems to me there were records here you should have produced, and you didn't do it. So that excuses the procedural default. But the claim still remains to be unexhausted, so that's why we analyze it under exhaustion. I understand, Your Honor. And that's why we're in a position today dealing with what we have from the district court, which is a decision on the merits, rejecting it on the merits. Unless Your Honors have further questions about the exhaustion issue, I'll spend the remainder of my time discussing the merits of the underlying Brady claims. But here the district court correctly denied relief because the petitioner's Brady claim rests on documents that are not material for impeachment purposes. That is, there's no reasonable probability of a different verdict had the state disclosed the documents at issue. The documents are immaterial first because they relate to collateral matters that were not the subject of any witness's trial testimony. For example, the petitioner contends that Myra Chrisman's bank records contradict Assistant District Attorney Milam's interview letter on the issue of whether or not Myra Chrisman made a tax refund deposit on the date of her son's murder. But whether Chrisman deposited this tax refund or not is immaterial and collateral since she did not testify about any tax refund deposit during the trial. Moreover, Chrisman's records coupled with Milam's letter cannot substantiate the Brady claim because defense counsel actually used these records to cross-examine Chrisman during the trial. In other words, he had these records and used them during the trial. And Brady does not apply to information that is either not undisclosed or not wholly within the prosecution's control. Similarly, Chrisman's deposition testimony from a related civil suit cannot substantiate the petitioner's Brady claim because the petitioner's criminal defense counsel actually represented the petitioner in that related civil proceeding and actually deposed Chrisman. Thus, this deposition testimony also was not wholly within the control of the prosecution. But in any event, the Milam letter, Chrisman's deposition testimony, and her trial testimony were all consistent on the point that the victim left his home wearing expensive Michael Jordan tennis shoes and also possibly carrying some cash. The comparatively conspicuous Michael Jordan shoes that went missing from the victim's body were the more significant evidence in terms of establishing the petitioner's intent to rob the victim. That was either concurrently formed or preceding the actual robbery murder. The petitioner also claims that a report summarizing a police interview with Corey Watkins could have been used to impeach Chrisman on her testimony that she had no knowledge of the victim actually using marijuana or cocaine. But the petitioner failed to present this as a basis for relief before the highest available state court, even though he listed this report as a basis for relief during his motion for new trial. Thus, this particular aspect of the petitioner's claim, if there are no others that are procedurally defaulted, this one certainly is defaulted since he had this information at the time of his motion for new trial, but did not present it to the highest available state court. In any event, Chrisman's knowledge or lack thereof about the victim's involvement with drugs is a collateral issue, and this point is demonstrated by the trial court's refusal to allow defense counsel to further cross-examine Chrisman about this subject matter during the trial. Second, the documents offered are... What about the evidence that shows that it was Chrisman and her husband that were essentially driving the train on felony murder decisions? And it looks like the state went through three prosecutors to finally find one who was willing to go with that theory, while prior ones expressed doubt. Don't you think that would have made a difference? Had the jury known that? I don't think that it's the... In weighing Chrisman's... Whether she had a bias or a motive to lie or stretch the testimony to fit what was her theory. First of all, I'll just address the point. It's not that this case went through three prosecutors. I believe the DA's office is set up such that there are initial investigating prosecutors who are involved in the earlier process, and then there's the more trial-oriented prosecutors who address the trial concerns later. But the petitioner's Brady claim hinges on the premise that these various documents could have been used to impeach Ms. Chrisman, and that Chrisman's testimony was somehow essential to the jury's verdict. But this entire premise is completely false. You're saying that without... You take Chrisman's testimony out completely, that the evidence on prior intent or contemporaneous intent to rob is overwhelming? Yes, Your Honor. What is it? The reason for that is that the Tennessee rule on felony murder is that the jury may infer an intent to rob based on a defendant's actions even after the... Defendant's actions immediately following the killing. We understand. There may have been... There was evidence to over... You know, sufficient for the jury to conclude based on, you know, the missing shoes, et cetera. But are you saying it's overwhelming? It is, Your Honor. And I'd refer back to... Earlier you referred to it as circumstantial evidence, and that evidence is evidence, for example, the victim's pockets being turned out, jewelry that was missing from the victim's body or at least found in the motel room. But more importantly... It's not equally consistent with they robbed him after he was dead. More importantly... He was killed, and they said, Yeah, these are expensive shoes. I'll take the shoes. And that was the jury's permissive inference to make, and all that evidence supports the inference notwithstanding Ms. Chrisman's testimony. And it was more than circumstantial evidence. It doesn't compel the conclusion. I mean, you're saying that if there's enough evidence to get to the jury, you can withhold whatever you want, and it's going to be harmless. There's no case law in that, is there? It doesn't compel that conclusion, but it doesn't compel that any more than Myra Chrisman's testimony would have compelled that. He was worried... The biggest problem with your overwhelming argument is what happened in the Barnes trial. It's the same evidence. We'd submit that it's not even appropriate to consider what happened in the Barnes trial. I understand you argue that. Here's my problem. You have good arguments for each one of these bits of information that was withheld, but part of the problem with the district court analysis, were we to get to the merits, is the district court did the same as you were doing, took them individually and didn't ever assess them collectively. And then when you combine that with Barnes, which I understand you think we shouldn't look at, it just seems to me that this is a much closer question than perhaps the state acknowledges it is with respect to the merits here. And to address your cumulative error argument, there's still the underlying rule that there can be no cumulative error in the absence of individual error. And so it's appropriate to go through each one of these pieces of individual evidence to assess whether or not individually there's any error to those to assess whether or not there's cumulative error. And simply in this case, there's no error on any piece of alleged undisclosed evidence that the petitioner raises, and given that none of them are erroneous individually... I think you might be conflating two different things here. You're correctly stating the standard if somebody is pointing to error on a particular evidentiary ruling, for example. We don't have that here. We're just looking at these items individually and collectively to consider the potential impact on the jury of the suppressed material. You still have to look at that collectively. There are a couple of things I want to point out. You're just saying individually, okay, no big deal, doesn't have much of a potential impact. Okay, you might be right individually, but that's different than when you look at it collectively. The bottom line is if we take out Myra Chrisman's entire testimony, there's more than just circumstantial evidence of this either concurrently formed or proceeding intent to rob. Part of that comes out of the petitioner's admitted killing of the victim, as well as his admission that immediately after killing the victim, he takes the victim's car. In addition to this, we have this theory presented by the petitioner that somehow this is a robbery gone bad. Mr. Chrisman went over there and Mr. Chrisman attempted to rob them. This is an individual who is under six feet tall, 142 pounds, 145 pounds, versus two individuals who are around 200 pounds and close to six feet each. It's highly unlikely that the jury is going to pursue a theory that this small individual came over with this crack cocaine to rob these two individuals and then just out of nowhere they retaliate. It's more likely that this man went over there, Mr. Chrisman went over there with drugs, and Mr. Eakes and Mr. Barnes decided to rob him. That's exactly what happened. That's the inference that the jury made was supported by evidence of the petitioner's admitted killing, the petitioner's admission that he took the victim's car after the fact. It's an odd place to do a robbery when they've rented a motel room under their own name to say that they premeditated a robbery to get this guy over to their hotel room so they can kill them in the hotel room that they've rented and that this was the whole thing. That seems rather incredible. The more likely scenario is that they got an argument over the drugs they were selling or didn't sell or should have sold or whatever the heck it is and they killed him. But to say that this is a set-up robbery, they're awfully dumb if this is the location for the robbery and the killing. And we're not saying that it was premeditated and that's not the standard. It could be concurrently informed. Maybe they got over there, maybe they got into a dispute. I hate to speak in maybes in front of this court, but the bottom line is they were over there, something happened, and they killed this man and then immediately afterwards took property from his person, rummaged through his pockets, and took his vehicle. But the robbery has to be in conjunction with the murder to be felony murder, right? It does, Your Honor. If it's separate, if the murder occurs and then, say, 12 hours later they take stuff off the body, it's not felony murder, right? It's not murder in connection with the robbery. Again, the tenancy law is that the jury can make that inference based on the facts immediately after the robbery. They don't have to have had the original intent to rob them. The murder just has to have occurred in connection with the perpetration of the robbery. That's correct, Your Honor. And we just feel that there is overwhelming evidence given this admission of the killing, given this admission of taking the victim's vehicle immediately after the killing, that the jury made an appropriate inference and that the evidence was overwhelming for them to make that inference and that that inference was appropriate notwithstanding my reprisonment's testimony. You could totally take out my reprisonment's testimony. I'm still struggling with how is it overwhelming if you're talking about inferences the jury could have drawn from circumstantial evidence, when you can draw an inference equally as logical that they were in a fight, they killed him, and then they look and say, hey, the guy's got expensive shoes, he's got a nice car, might as well take him. Well, Myra Chrisman's testimony didn't add anything to that. Whether or not she said that he was wearing the shoes or whether they subsequently find the petitioner without the shoes, either one of those facts can equally support the jury's inference in that regard. So in other words, Myra Chrisman's testimony that he was wearing the shoes doesn't add anything that the jury can then base the verdict... But there was a jury. And her testimony was very inconsistent between what she had told the investigators or the prosecutors shortly after the incident and what she testified at trial, and that's what was withheld. And so the evidence that he was wearing all this expensive jewelry was significant because that's something that obviously they would have seen. Even to the extent that he may have been wearing jewelry and that Ms. Chrisman testified of that, there's still evidence in the shoes in terms of the conspicuousness of the property taken. Certainly the shoes would be conspicuous, more than on the outside. Any jewelry would be conspicuous. So whether or not there was also jewelry or whether or not she testified of jewelry, it was evident that there were items missing from the victim's body when he was found dead. What about the evidence that was withheld that clearly showed that Myra Chrisman and her husband were the ones who were pushing the state to charge felony murder and that the prosecutors even expressed doubt over it? Don't you think the jury should have known that? I'm not sure what Your Honor is talking about when you said that the prosecutors were expressing doubt over that. I didn't find that in the record. It's in Exhibit 3, 4, 5. There's language about they're stretching. The facts don't support their theory. As far as the victims pushing the case, I think specifically what you may be talking about is how the victim's family wanted a certain sentence. They're not knowledgeable in the law, but they wanted either a death sentence or life without possibility of parole. Basically, he insists that they could have been impeached on this basis to show character bias. We state that the character bias of a parent of a murdered victim is readily apparent, and in any event, introduction of that information to the jury would have been inappropriate since they're not supposed to be informed or encouraged to ponder sentencing when they have no sentencing function. So to put in front of the jury information about a potential sentence because that's what the victim's mother wanted would have been highly inappropriate. I believe I'm out of time. All right, we've got the state's response. Thank you. Mr. Holley, I forgot to ask you if you reserved any rebuttal time. I have three minutes. You may. I just want to clear up a couple things. One is our theory when we talk about a robbery gone bad is not that Tahitian Crispin was coming over to rob them. It seemed to me the state's theory at trial is that they must have intended to rob him when fighting with him and killing him, and that's the robbery gone bad. Our theory is, just as Judge Griffin stated, is he came over to sell drugs. There was some kind of dispute, and they got in a fight, and it was fatal. That seems like logical inference. Also, in regard to the jewelry, the mother also said that he had a $380 watch and a $528 gold ring with diamonds and the $175 that she'd given him that day. Is that right? That's right, Your Honor. And at least the watch and the gold ring with diamonds would be readily apparent. Yes, Your Honor, he'd be wearing them. In regard to the robbery theory, I guess. Those, I think, Your Honor, would be the kind of thing that someone could steal to pawn. We don't know. I mean, all we know after the fact is that his pockets were pulled out, his wallet was gone, and his shoes were gone. The car was gone, I guess. Yes, Your Honor. And the state is saying, well, the shoes are the most important fact showing an intentional robbery, a pre-killing intentional robbery. Temporaneous, maybe, is the word. Okay, yes. But that wasn't the state's theory. The prosecutor, Mr. Milam, knew his shoes were missing when he sat down with the parents, and then they told him about all this property, supposedly flashy stuff he supposedly had, and that's what triggered the charge. And that's what they argued in the judgment of acquittal argument, and that's what they argued at trial. And they never even argued the drugs. They never tried to argue the drugs were stolen. The drugs could be the subject of the robbery, couldn't they? It kind of struck me as odd that that wasn't the theory, that you had felony murder because they killed him to get the drugs that they had rather than give him the money for it. Perhaps it could have been. It never was their theory in either of the trials. He didn't have the drugs on his person either after the fact. His crack cocaine was taken. If he had it. I mean, the crack cocaine is probably, I don't know how much he had right now, but it seems like that may be more valuable than his tennis shoes. It depends on if he had any. Often they could sell $10, $20 worth. But there's no evidence of that, and the state fought to keep evidence of that out, that he would have come over with drugs. Why? I mean, that seems very relevant, the fact that he comes over to sell them drugs. They fought to keep that out, and that was essentially kept out. Any other questions? No. Okay. All right, thank you. We will carefully consider the case, and it may be submitted. And the clerk may call.